UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADAM WESLEY COLEMAN,

Plaintiff,

v.

ATC HEALTHCARE et al.,

Defendants.

Case No. 1:26-cv-788

Honorable Sally J. Berens

# OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, the Court granted Plaintiff leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (Compl., ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S.

344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, Pub. L. No. 104-134, 110 Stat. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim for the reasons detailed below.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated in the Cass County Jail, located in Cassopolis, Cass County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following Defendants in their official and personal capacities: Medical Provider ATC Healthcare, Unknown Party #1 Head Nurse "Chastity," Unknown Party #2 "Provider," Captain Unknown Shupe, and Unknown Party #3 "Undersheriff."

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

In his amended complaint, Plaintiff alleges that he suffers from seizures and has not been provided with the proper medication while in jail. (Am. Compl., ECF No. 5.) Plaintiff submitted "multiple requests to the Nurse." (*Id.*, PageID.24.)

Plaintiff states that he had a seizure on "May 12th," and, on May 16, 2025, "they" put Plaintiff on a dose of .5 mg of clonazepam. (*Id.*)[2]

On June 23, 2025, Plaintiff submitted a medical kite indicating that he was "supposed to take 300 mg Dilantin and 2400 mg Gabapentin and 3 mg [Klonopin]" and asking for "suboxone or what." (*Id.*, PageID.20.) That same day, Plaintiff received a response, stating, "Have to go with what the pharmacy said until we get med reports, they said you get 100 mg Dilantin daily there is a process for [medication-assisted treatment (MAT)]." (*Id.*) Plaintiff submitted a second kite asking for a higher dose of Dilantin; however, the response stated, "All I can do is what pharmacy told us until we get records." (*Id.*)

On June 24, 2025, Plaintiff submitted another medical kite, explaining that he received a higher dose of Dilantin last time he was in the Cass County Jail. (*Id.*) He received a response, stating, "Have to go by most recent pharmacy records." (*Id.*)

On June 27, 2025, Plaintiff submitted a kite, stating, "I was told I would see a dr. this week[.] I'm still only getting 1 of 3 seizure meds and you have my records and was going to start MAT meds this week[. T]his week is over." (*Id.*) The response of July 3, 2025, indicated that Plaintiff was on his "correct dose of mediation." (*Id.*)

---

[2] Clonazepam is the active ingredient in the brand-name drug Klonopin. U.S. Food and Drug Administration Drug Database, https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm ("Search by Drug Name, Active Ingredient, or Application Number" enter "Klonopin," select "Search") (last visited Sep. 10, 2026).

On July 30, 2025, Plaintiff submitted a kite asking if he would "ever see the provider," and was told that he was "on the list." (*Id.*) He also submitted a kite stating that he was only getting one of the three seizure medications prescribed by his neurologist. (*Id.*) The response indicated that Plaintiff would be seen. (*Id.*)

On August 25, 2025, Plaintiff submitted a kite complaining that he had not been seen by the provider in person, that he was not being supervised, and that medical staff "could crush Klonopin." (*Id.*) It appears that Plaintiff received a response that the "decision" had been "made by provider." (*Id.*)

On December 10, 2025, Plaintiff saw Defendant Provider "to get on suboxone," but his request was denied. (*Id.*, PageID.24.)

Plaintiff submitted two grievances on December 12, 2025, and December 28, 2025, and told Defendant Shupe and Defendant Undersheriff that it was common knowledge that "stopping a benzo causes seizures," that he was epileptic, and that he wanted his prescriptions. (*Id.*, PageID.21.) Defendants Shupe and Undersheriff agreed with Defendant Provider that Plaintiff did not need the medications requested. (*Id.*, PageID.21, 24.)

On or about January 18, 2026, Plaintiff was hospitalized. (*Id.*, PageID.24.)

Plaintiff states that, as of the time of the filing of his complaint, he was having seizures "regularly." (*Id.*, PageID.21–24.) He also specifically describes having seizures on "March 5 or 6th," "May,"[3] "May 12th," and the month prior to filing his complaint. (*Id.*)

Throughout Plaintiff's stay in the Cass County Jail, Defendants Chastity and Provider have frequently adjusted Plaintiff's medications. (*Id.*, PageID.22.) After "several ROIs and grievances" Plaintiff now receives 500 mg of Dilantin and 1,600 mg of gabapentin and .5 mg of clonazepam.

[3] It is unclear whether these dates refer to 2025 or 2026.

(*Id.*, PageID.22, 24.) Plaintiff believes that he should receive 3 mg of clonazepam. (*Id.*, PageID.24.)

Plaintiff also alleges that "they" have threatened to put Plaintiff in segregation and take Plaintiff off his medications if he "keep[s] having issues." (*Id.*, PageID.22.) After filing his lawsuit, Defendant Provider "said to put [Plaintiff] in seg[regation] for observation." (*Id.*, PageID.25.)

Based on the foregoing allegations, Plaintiff seeks monetary and injunctive relief. (*Id.*, PageID.26.)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Claims against ATC Healthcare

Plaintiff lists ATC Healthcare as a Defendant. A private entity, such as ATC Healthcare, that contracts with a governmental entity to perform a traditional governmental function like providing healthcare to inmates can "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West*, 487 U.S. at 54).

The requirements for a valid Section 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of Section 1983. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell* has been extended to private corporations); *Street*, 102 F.3d at 817–18 (same); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v. Jackson*, 579 F. Supp. 2d 831, 851–52 (E.D. Mich. 2008) (same). Therefore, ATC Healthcare cannot be held vicariously liable for the actions of its employees under Section 1983. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989). Instead, it may be liable only when its official policy or custom causes the injury. *Connick*, 563 U.S. at 60. This policy or custom must be the moving force behind the alleged constitutional injury, and the

plaintiff must identify the policy or custom, connect it to the governmental entity, and show that his injury was incurred because of the policy or custom. *See Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005).

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the entity. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Moreover, the Sixth Circuit has explained that a custom "for purposes of *Monell* liability must 'be so permanent and well settled as to constitute a custom or usage with the force of law.'" *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996). "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.* at 508. Plaintiff's complaint is devoid of any allegations suggesting that his alleged constitutional injuries were the result of official policies or customs employed by ATC Healthcare. The Court, therefore, will dismiss ATC Healthcare as a Defendant. *See Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of Section 1983 action when plaintiff's allegation of custom or policy was conclusory, and plaintiff failed to state facts supporting the allegation).

### B. Official Capacity Claims

Plaintiff also sues Defendants in their official capacities. Official-capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell*, 436 U.S. at 690, n. 55). Therefore, an official-capacity suit is to be treated as a suit against the entity itself. *Id*. at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)); s*ee also Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). "Individuals sued in their official capacities stand in the shoes of the entity they represent," and the suit is not against the official personally. *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *Graham*, 473 U.S. at 165–66.

Here, Plaintiff's amended complaint alleges that Defendant Provider is employed by Defendant ATC Healthcare. (*See* Am. Compl., ECF No. 5, PageID.19.) Therefore, Plaintiff's official capacity claims against Defendant Provider are, in reality, claims against ATC Healthcare and will be dismissed for the same reasons discussed above.

Plaintiff alleges that Defendants Chastity, Shupe, and Undersheriff are employed by Cass County. (*Id.*) Like ATC Healthcare, Cass County cannot be held vicariously liable for the actions of its employees under Section 1983; it too may be liable only when its official policy or custom causes the injury. *See Connick*, 563 U.S. at 60; *Harris*, 489 U.S. at 392. Because Plaintiff has not alleged facts that would plausibly suggest that his alleged constitutional injuries were the result of official policies or customs employed by Cass County, Plaintiff's official capacity claims against the remaining Defendants will be dismissed as well. *See Monell*, 436 U.S. at 690.

**C. Medical Care Claims**

Plaintiff brings claims for the denial of medical care. "The Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Rhinehart v. Scutt*, 894 F.3d 721, 736–37 (6th Cir. 2018); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). Both "[t]he Eighth and Fourteenth Amendments are violated 'when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety.'" *Id.* (citations omitted). Because Plaintiff alleges that he was not scheduled for trial until June 16, 2026 (Am. Compl., ECF No. 5, PageID.23), it appears that Plaintiff was a pretrial detainee at the time of the events described in the complaint.

Until recently, the Sixth Circuit "analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" *Greene v. Crawford Cnty.*, 22 F.4th 593, 605 (6th Cir. 2022) (quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 591 (6th Cir. 2021)). Then, in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Supreme Court differentiated the standard for excessive force claims brought by pretrial detainees under the Fourteenth Amendment's Due Process Clause from those brought by convicted prisoners under the Eighth Amendment. *Id*. at 392–93. *Kingsley* left unanswered the question of "whether an objective standard applies in other Fourteenth Amendment pretrial-detainment context[s]." *Brawner*, 14 F.4th at 592.

Subsequently, in *Brawner*, the Sixth Circuit modified the second prong of the deliberate indifference test applied to pretrial detainees to require only recklessness. *Id.* at 592, 596. At issue in *Brawner* was a pretrial detainee's claim for deliberate indifference to medical needs. The Sixth Circuit held that, to demonstrate deliberate indifference, "[a] pretrial detainee must prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* at 596 (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)); *see also Helphenstine v. Lewis Cnty., Ky.*, 60 F.4th 305, 316–17 (6th Cir. 2023) (affirming that *Kingsley*, as interpreted by *Brawner*, required courts to "lower the subjective component from actual knowledge to recklessness"). A pretrial detainee must prove that the defendant acted "deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Brawner*, 14 F.4th at 596 (citation and quotation marks omitted). The Sixth Circuit has explained "that this test requires more than mere negligence." *Hehrer v. Cnty. of Clinton, Michigan*, 161 F.4th 955, 964 (6th Cir. 2025) (citing *Brawner*, 14 F.4th at 596).

*Brawner*, however, "left the [objective] prong untouched." *Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899; *see also Phillips v. Roane County*, 534 F.3d 531, 539–40 (6th Cir. 2008).

At this stage of the litigation, the Court will assume without deciding that Plaintiff's seizures constitute an objectively serious medical condition. *See Newberry v. Melton*, 726 F. App'x 290, 295 n.2 (6th Cir. 2018) (finding that the prisoner plaintiff's seizure, resulting in bruises, cuts, vomiting, an inability to breathe constituted an objectively serious medical condition and recognizing that "other courts treat a complete failure to respond to epilepsy and seizures associated with it as objectively serious medical needs without any analysis") (citing *Hudson v. McHugh*, 148 F.3d 859, 863 (7th Cir. 1998); *Jolly v. Badgett*, 144 F.3d 573, 573 (8th Cir. 1998); *Vandermolen v. Chamberlin*, No. 14-CV-06113, 2016 WL 4098656, at *4 (W.D. Ark. June 30, 2016)). Therefore, the Court must analyze whether Plaintiff has alleged sufficient facts plausibly to suggest that the named Defendants acted recklessly with respect to Plaintiff's seizures. *See Brawner*, 14 F.4th at 596.

**1. Defendants Shupe and Undersheriff**

Plaintiff alleges that Defendants Shupe and Undersheriff denied Plaintiff's grievances, agreeing with the treatment plan of the jail medical provider. (Am. Compl., ECF No. 5, PageID.21, 24.) As the Sixth Circuit has explained, absent obvious constitutional violations, non-medical defendants

> lack medical expertise. So they typically act reasonably by referring an inmate's health concerns to medical personnel. *See Mercer v. Athens County*, 72 F.4th 152, 162–63 (6th Cir. 2023); *Shaver v. Brimfield Township*, 628 F. App'x 378, 383 (6th Cir. 2015); *Smith v. County of Lenawee*, 505 F. App'x 526, 533–34 (6th Cir. 2012). Likewise, once inmates begin to receive care from a medical professional, officers typically act reasonably by following the "medical professional's diagnosis or treatment." *Grote* [*v. Kenton Cnty., Kentucky*, 85 F.4th 397, 412 (6th Cir. 2023)]; *see McGaw v. Sevier County*, 715 F. App'x 495, 497–99 (6th Cir. 2017); *see also Graham v. County of Washtenaw*, 358 F.3d 377, 384 (6th Cir. 2004). A contrary rule would adopt the (potentially dangerous) proposition that lay staff have a duty to veto medical decisions from trained professionals. *See McGaw*, 715 F. App'x at 498.

*Hehrer*, 161 F.4th at 964.

Here, Plaintiff does not allege that Defendants Shupe and Undersheriff were directly involved in the provision of medical care in the Cass County Jail. Instead, Plaintiff alleges that, when he brought his medical concerns to their attention, Defendants Shupe and Undersheriff deferred to the judgment of Defendant Provider, the medical doctor for the Jail. (Am. Compl., ECF No. 5, PageID.21, 24.) As described above, this does not amount to a violation of Plaintiff's due process rights. Accordingly, the Court will dismiss Plaintiff's medical care claims against Defendants Shupe and Undersheriff.

**2. Defendant Chastity**

Plaintiff alleges that he submitted multiple medical kites to Defendant Chastity from June 23, 2025, to June 30, 2025, and that, rather than providing Plaintiff with the requested medication doses, Defendant Chastity responded that Plaintiff would be provided with medication according to Plaintiff's most recent pharmacy records until medical staff had further medical reports. (Am. Compl., ECF No. 5, PageID.20, 24). On June 30, 2025, Defendant Chastity confirmed that Plaintiff was on the list to be seen by Defendant Provider. (*Id.*, PageID.20.) On August 25, 2025, Defendant Chastity told Plaintiff that Plaintiff was being provided with the medications ordered by Defendant Provider. (*Id.*, PageID.20.) Plaintiff also claims that, during his time in the Cass County Jail,

Defendant Chastity frequently adjusted Plaintiff's medications. (*Id.*, PageID.22.) These allegations, taken as true, do not plausibly suggest that Defendant Chastity responded recklessly to Plaintiff's medical condition. Accordingly, the Court will dismiss Plaintiff's medical care claims against Defendant Chastity.

**3. Defendant Provider**

Plaintiff alleges that he was on the list to see Defendant Provider at least as early as June 2025. (Am. Compl., ECF No. 5, PageID.20.) Although he had not been seen by Defendant Provider in person as of August 25, 2025, Defendant Provider had made decisions concerning Plaintiff's medication, which appear to have included one of Plaintiff's three seizure medications and .5 mg of clonazepam. (*Id.*) Plaintiff alleges that he saw Defendant Provider in person on December 10, 2025 (*id.*, PageID.24), and that Defendant Provider frequently adjusted Plaintiff's medications (*id.*, PageID.22), but Plaintiff continued to suffer from regular seizures.

It is important to note that *Brawner* did not constitutionalize claims of mere medical negligence. *See Brawner*, 14 F.4th at 596 (stating that a plaintiff must show "more than negligence"). However, at this early stage of the litigation, the Court cannot say that Plaintiff is unable to show that Defendant Provider "recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Helphenstine*, 60 F.4th 305 (quoting *Brawner*, 14 F.4th at 596). Accordingly, the Court will allow Plaintiff to proceed with his Fourteenth Amendment medical care claim against Defendant Provider.

**D. Claims regarding Plaintiff's Use of the Grievance Process**

Plaintiff alleges that he submitted multiple grievances but did not receive a satisfactory response. This allegation fails to state a claim for violation of Plaintiff's constitutional rights.

First, Plaintiff has no due process right to file a jail administrative grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective

grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, any conduct of Defendants related to Plaintiff's use of the grievance process cannot give rise to a due process claim.

Second, any actions (or inactions) of Defendants with regard to the grievance process could not constitute a violation of the First Amendment right to petition the government. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minnesota State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Third, Plaintiff has not been barred from all means of petitioning the government for redress of grievances. Even if Plaintiff had been improperly prevented from filing a grievance, his right to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion

would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

Therefore, for each of the foregoing reasons, the Court will dismiss Plaintiff's claims related to his use of the grievance process.

**E. First Amendment Retaliation Claims.**

The Court will also liberally construe Plaintiff's amended complaint as raising claims of First Amendment retaliation. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, Plaintiff does not allege sufficient facts to state a claim of First Amendment retaliation. First, Plaintiff alleges that unidentified individuals ("they") threatened to put Plaintiff in segregation and take Plaintiff off his medications if he "keep[s] having issues." (Am. Compl., ECF No. 5, PageID.22.) These factual allegations, even if construed against Defendants as a group, are insufficient to implicate any named Defendant. "Summary reference to a single, five-headed 'Defendants' [or officers or staff] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted). Thus, any

claims against healthcare staff, Jail staff, or Defendants as a group fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and will be dismissed. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Second, Plaintiff alleges that, after filing his lawsuit, Defendant Provider "said to put [Plaintiff] in seg[regation] for observation." (Am. Compl., ECF No. 5, PageID.25.) This too is insufficient to state a claim for First Amendment retaliation.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (N.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). However, "alleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x. 579, 579–80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive). Here, Plaintiff has not alleged any *facts* that would plausibly suggest that Defendant Provider knew of Plaintiff's lawsuit, let alone that Defendant Provider placed Plaintiff in segregation as retaliation for Plaintiff's protected conduct. Accordingly, the Court will dismiss Plaintiff's claims of First Amendment retaliation.

**F. Sixth Amendment Right to Counsel Claims**

In his amended complaint, Plaintiff notes that his criminal attorney recently removed himself from Plaintiff's criminal case and that he has not been appointed a new attorney. (Am.

Compl., ECF No. 5, PageID.23.) The Sixth Amendment protects the right of the accused "[i]n all criminal prosecutions . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "Although government interference with a defendant's relationship with his counsel may constitute a Sixth Amendment violation," *Dye v. Hofbauer*, 197 F. App'x 378, 383 (6th Cir. 2006), Plaintiff has not presented any facts that would suggest that any of the named Defendants interfered with Plaintiff's relationship with his criminal attorney or otherwise caused Plaintiff's attorney to withdraw from the case. Therefore, to the extent that Plaintiff seeks to bring a Section 1983 claim in this Court concerning Plaintiff's right to counsel, his claim will be dismissed.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Defendants ATC Healthcare, Unknown Party #1 Nurse Chastity, Unknown Shupe, and Unknown Party #3 Undersheriff will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendant Provider: official capacity claims, claims concerning Plaintiff's use of the grievance process, First Amendment retaliation claims, and Sixth Amendment claims concerning Plaintiff's right to counsel. Plaintiff's Fourteenth Amendment medical care claim against Defendant Provider remains in the case.

An order consistent with this opinion will be entered.

Dated: September 25, 2026

/s/ Sally J. Berens
SALLY J. BERENS
United States Magistrate Judge